# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

Nº 05-CV-4798 (JFB) (LB)
_____

JOHN F. GALTIERI,
MARILYN J. GALTIERI,

Plaintiffs,

VERSUS

RAYMOND KELLY,
PERSONALLY AND IN HIS OFFICIAL CAPACITY AS POLICE COMMISSIONER OF THE CITY OF NEW YORK,
AND AS CHAIRMAN OF THE BOARD OF TRUSTEES OF THE POLICE PENSION FUND, ARTICLE II;
THE BOARD OF TRUSTEES OF THE POLICE PENSION FUND, ARTICLE II,
MICHAEL D. WELSOME,
PERSONALLY AND IN HIS OFFICIAL CAPACITY AS EXECUTIVE DIRECTOR POLICE PENSION FUND
OF THE CITY OF NEW YORK;
RHONDA CAVAGNARO,
PERSONALLY AND IN HER OFFICIAL CAPACITY AS GENERAL COUNSEL FOR THE NEW YORK CITY
POLICE PENSION FUND;
JEANNE M. KANE,

Defendants.

_____

MEMORANDUM AND ORDER
June 19, 2006
_____

JOSEPH F. BIANCO, District Judge:

John F. Galtieri and Marilyn J. Galtieri, plaintiffs *pro se*, filed the instant action under 42 U.S.C. § 1983 seeking damages for the garnishment of John Galtieri's accident disability pension to his ex-wife, pursuant to a New Jersey court order. The defendants move to dismiss the action under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Finding that the Court lacks subject matter jurisdiction over the complaint based on the *Rooker-Feldman* doctrine, the Court dismisses the instant case, with prejudice.

## I. BACKGROUND

Plaintiff John Galtieri was formerly married to defendant Jeanne Kane. (Compl. ¶ 7.) During their marriage, John Galtieri was employed as an officer with the New York City Police Department (NYPD).[1] John Galtieri retired on February 24, 1980, because of injuries that he assumed in the line of duty. *See* NY Opinion at 1-2. Based on these circumstances, John Galtieri was awarded accidental disability retirement benefits from the New York City Police Pension Fund (hereinafter the "Police Pension Fund"). (Compl. ¶ 4.)

### A. New Jersey Divorce Proceedings

John Galtieri filed for a divorce from Kane in Superior Court Chancery Division, Family Part, Monmouth County, New Jersey on or about December 20, 1999. *See* NY Opinion at 2. At the time of filing, John Galtieri and Kane had been residing in New Jersey for over a year, rendering it the proper venue for the divorce proceeding. *See id.* On May 19, 2003, the New Jersey Superior Court entered a Final Judgment of Divorce. *See id.* The Final Judgment of Divorce directed that John Galtieri:

> shall pay permanent alimony to [Kane] . . . based on the evidence presented regarding [Galtieri's] income and ability to pay, [Kane's]

need and inability to work, the fault of [Galtieri] for the demise of the marriage . . . . Alimony shall be paid via wage garnishment, from the Plaintiff's [Galtieri's] social security disability income . . .

*Id.* (quoting paragraph 4 of the Final Judgement of Divorce). This decree did not reference John Galtieri's NYPD disability pension. *See id.* at 3.

On December 12, 2003, the New Jersey Superior Court issued an amended order, which directed that Kane's monthly alimony should be paid directly to her from John Galtieri's NYPD disability pension and from his social security disability pension. *See id.*[2] John Galtieri appealed the December 12, 2003 order, based on an argument that the Police Pension Fund was immune from claims for alimony because the disability pension was the equivalent of an award for personal injuries. *See Galtieri*, 2005 WL 2757230, at *2. The Appellate Division of the New Jersey Superior Court denied John Galtieri's appeal as lacking merit on August 19, 2004. *See id.*

While the appeal of the December 12, 2003 order was pending, John Galtieri filed a motion with the New Jersey Superior Court to set aside the judgment of divorce on grounds of fraud and the statute of limitations. *See id.* The motion was denied following a hearing on June 4, 2004. *See id.* John Galtieri proceeded to appeal that decision, arguing that "the

---

[1] *See Galtieri v. Kelly*, Index. No. 108166/05 (N.Y. Sup. Ct. N.Y. County Sept. 26, 2005) at 1. This opinion is the one rendered in John Galtieri's proceeding pursuant to NY CPLR Article 78, discussed *infra*. This opinion is referred to as the "NY Opinion" for citation purposes and is attached as Exhibit 2 to the defendants' motion to dismiss.

[2] The long procedural history of the divorce proceeding through the December 12, 2003 order is extensively chronicled in *Galtieri v. Kane*, No. FM-13-1018-OOC, 2005 WL 2757230, at *1-2 (N.J. Super. Ct. App. Div. Oct. 26, 2005). The opinion is attached as Exhibit 1 to defendants' motion to dismiss.

Superior Court of New Jersey lacked jurisdiction to enforce an order against plaintiff's [NYPD disability pension], and that his disability pension is an asset that is immune from the garnishment order." *See id.* The Appellate Division of the New Jersey Superior Court affirmed the lower court decision by opinion dated May 25, 2005, finding that neither of plaintiff's arguments had been raised below. *See id.* Additionally, with regards to his argument that his NYPD disability pension was immune from garnishment, the Appellate Division found that "plaintiff had his day in court at both the trial and appellate levels on December 12, 2003 and August 3, 2004, and on August 19, 2004, [where] we affirmed the trial court's order of garnishment from his [NYPD disability pension] and his social security pension." *Id.* (citation omitted).

After the New Jersey Superior Court issued the December 12, 2003 order (which directed garnishment of his NYPD disability pension), the Police Pension Fund's legal department informed Kane that she needed a Domestic Relations Order (DRO) in order to give effect to the garnishment order. *See id.* Kane subsequently retained a law firm to draft a DRO which was submitted to the Police Pension Fund for approval. *See id.* On June 30, 2004, Kane appeared before a New Jersey Superior Court judge, Judge Daniel Waldman, to request that the court sign the DRO that was drafted and pre-approved by the Police Pension Fund. *See id.* at *3. Although Judge Waldman signed the DRO, he told Kane that there was an error in the document in its reference to the pension garnishment as equitable distribution rather than alimony. *See id.* Kane subsequently took the DRO back to her attorneys to have it corrected. *See id.*

On December 23, 2004, another New Jersey Superior Court judge, Judge James J. McGann, vacated the DRO, issued on June 30, 2004, because insufficient notice was given to John Galtieri. *See id.*

On January 7, 2005, Judge McGann ordered that a sum of $1,500 per month be garnished from John Galtieri's NYPD disability pension. *See id.* Kane prepared an Amended DRO that reflected the amount of funds to be garnished that was contained in Judge McGann's order, and submitted it to Judge McGann and the Police Pension Fund for approval. *See id.* The Police Pension Fund approved the Amended DRO by letter dated January 19, 2005. *See id.*

On March 4, 2005, Michael Welsome, the Executive Director of the Fund and one of the defendants in the instant action, sent a letter to John Galtieri, informing him that the Police Pension Fund was not making any payments to Kane despite Judge McGann's garnishment order of January 7, 2005. *See id.* The letter informed John Galtieri that it had notified Judge McGann that, unless he determined that the pension was not subject to equitable distribution, a DRO was the preferred method of making distributions. *See id.* If, however, the basis of the award was maintenance, then the previous order was sufficient to effect the garnishment. *See id.*

On March 11, 2005, Judge McGann issued an Amended DRO, directing the Police Pension Fund to pay $1,500 per month from John Galtieri's NYPD disability pension. *See id.* Judge McGann stated for the record that the order concerned John Galtieri's alimony obligation, and did not constitute equitable distribution. *See id.*

On April 1, 2005, John Galtieri appealed

the Amended DRO issued by Judge McGann on March 11, 2005. *See id.* In that appeal, John Galtieri argued that his disability pension was not subject to wage garnishment. *See id.* at *4.[3] By decision rendered October 26, 2005, the Appellate Division affirmed in a *per curiam* opinion, noting that many of the arguments had been rejected in his prior appeals. *See id.* at *6. In closing, the court noted that John Galtieri had avoided paying alimony to Kane by filing repetitive litigation, and "[t]he garnishment of plaintiff's [NYPD disability pension] may be the only way to

enforce [John Galtieri's] obligation." *Id.* The court suggested that the trial court "may wish to give consideration to the imposition of an injunction or other sanction against [John Galtieri], in the event [he] attempts to bring further duplicative or vexatious litigation over the subject matter in the State of New Jersey." *Id.*[4]

## B. New York CPLR Article 78 Proceeding

In parallel to the aforementioned proceedings in New Jersey, John Galtieri commenced an action in New York under Article 78 of the New York Civil Practice Law and Rules, which provides for judicial review of decisions by government bodies or officers. In this action, John Galtieri sought to annul the actions of the Police Commissioner and Police Pension Fund, with respect to the disbursement of his NYPD disability pension funds to Kane. *See* NY Opinion at 1. John Galtieri alleged that the disbursement constituted an illegal garnishment and unlawful taking because New York law does not permit an accidental disability pension to be treated as property subject to equitable distribution. *See id.* at 3.

---

[3] The Appellate Division summarized his various arguments as follows:

> that (1) the trial court erred in executing a domestic relations order to levy against appellant's [NYPD disability pension]; (2) the trial court abused its authority in levying against appellant's [NYPD disability pension], which he claims is statutorily protected from garnishment, execution, and levy; (3) the trial court erred in allowing respondent to levy against appellant's [NYPD disability pension] to enforce her alimony award; (4) the trial court erred in executing the DRO to enforce an alimony award which denies appellant his right to downward modification of alimony and contradicts New Jersey [law] which states alimony ceases if the defendant spouse remarries; (5) that appellant's [NYPD disability pension] is not income from which the trial court can levy against for alimony; and (6) by its action and orders submitted on December 23, 2004, January 7, 2005, February 10, 2005, the trial court misled the pension administrators to believe the DRO submitted for pre-approval was a form of order to enforce an equitable distribution of marital property.

Id. at 4.

---

[4] To the same ends, the court later stated:

> If problems persist at the trial court level, the trial judge should consider whether imposing monetary sanctions on plaintiff would work, and if not, then the court might consider taking the unusual step of enjoining plaintiff from future litigation. It is of concern from the procedural history of this case that plaintiff may be abusing the system. His conduct continually harasses defendant through this unending litigation, as well as wastes both judicial time and resources.

*Id.*

By opinion dated September 26, 2005, the court denied John Galtieri's petition and dismissed the action for want of jurisdiction. *See id.* at 6. Specifically, the court found that jurisdiction had been properly laid in New Jersey, and that they were required under the Full Faith and Credit Clause of the Constitution "to give the same effect to a properly obtained New Jersey divorce decree that New Jersey would give." *Id.* at 5. The court concluded that the jurisdiction over the Final Judgment of Divorce and all subsequent DROs remained with New Jersey, and "[t]o the extent that [John Galtieri] seeks to change or to modify the orders he deems offensive, his remedy is to appeal the New Jersey orders to the appropriate New Jersey courts." *Id.* at 5-6.

### C. The Instant Proceeding

On October 17, 2005, John Galtieri and his current wife, Marilyn Galtieri, filed the instant action under 42 U.S.C. § 1983. The case was re-assigned to the undersigned from the Honorable Nina Gershon on February 10, 2006. Defendants move to dismiss the complaint for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim upon which relief may be granted, Fed. R. Civ. P. 12(b)(6). The Court held oral argument on the instant motion to dismiss on June 16, 2006.

### II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, the court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enterprises*, — F.3d —, 2006 WL 1314684, at *2 (2d Cir. May 15,

2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). When considering a motion to dismiss a *pro se* complaint "courts must construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of N.Y.*, 287 F.3d 138, 145-46 (2d Cir. 2002) (quoting *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000)). Dismissal is warranted only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Weixel*, 287 F.3d at 145 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Twombly v. Bell Atl. Corp.,* 425 F.3d 99, 106 (2d Cir. 2005).

A motion to dismiss for want of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is reviewed under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Coveal v. Consumer Home Mortgage, Inc.,* No. 04-CV-4755 (ILG), 2005 WL 2708388, at *2 (E.D.N.Y. Oct. 21, 2005) (citing *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.), *cert. denied*, 540 U.S. 1012, 124 S.Ct. 532(2003)). Further, the court may consider evidence beyond the pleadings to resolve disputed issues of fact regarding its jurisdiction. *See Flores v. S. Peru Copper Corp.,* 414 F.3d 233, 255 n.30 (2d Cir. 2003). "A court presented with a motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6) must decide the 'jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction.'" *Coveal*, 2005 WL 2708388, at *2 (quoting *Magee v. Nassau County Med. Ctr.,* 27 F.

Supp. 2d 154, 158 (E.D.N.Y. 1998)); *see also Rhulen Agency, Inc. v. Alambama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (noting that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction).

## III. DISCUSSION

Defendants argue that this case should be dismissed under Fed. R. Civ. P. 12(b)(1) because they claim that this Court lacks subject matter jurisdiction over this case under the *Rooker-Feldman* doctrine, which stands for the general proposition "that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005).

In *Hoblock*, the Second Circuit rigorously re-examined the *Rooker-Feldman* doctrine in light of the Supreme Court's recent decision in *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 125 S.Ct. 1517 (2005). *See Hoblock*, 422 F.3d at 83. The Second Circuit noted that *Exxon Mobile* reduced the expanse of the *Rooker-Feldman* doctrine, "holding that it 'is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Hoblock*, 422 F.3d at 85 (quoting *Exxon Mobile*, 544 U.S. at 284). Thus, the Second Circuit found that there are four requirements for the application of *Rooker-Feldman*: (1) "the federal-court plaintiff must have lost in state court"; (2) "the plaintiff must complain of injuries caused by a state court judgment"; (3) "the plaintiff must invite district court review and rejection

of that judgment"; and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." *Hoblock*, 422 F.3d at 85 (internal citations and quotations omitted). The Second Circuit noted that the first and fourth requirements may be loosely termed "procedural" and the second and third requirements may be termed "substantive." *Id.* The Court proceeds to analyze the elements in the same order that the Second Circuit did in *Hoblock*, by first examining the substantive elements, and then proceeding to consider the procedural elements.

### A. Substantive *Rooker-Feldman* Requirements

As previously stated, the two substantive requirements of *Rooker-Feldman* are: (1) the federal plaintiff must complain of injury from a state-court judgment; and (2) the federal plaintiff must seek federal-court review and rejection of the state-court judgment. *See Hoblock*, 422 F.3d at 85. These substantive requirements support the principle, expressed in 28 U.S.C. § 1257, that only the United States Supreme Court may review state-court decisions within the federal judicial system.[5] *See id*. However, § 1257 does not deprive a district court of subject-matter jurisdiction

> simply because a party attempts to litigate in federal court a matter previously litigated in state court . . . . If a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is

---

[5] Habeas corpus review stands as an exception to this general principle. *See Hoblock*, 422 F.3d at 85 n.5.

jurisdiction and state law determines whether the defendant prevails under principles of preclusion."

*Exxon Mobile*, 544 U.S. at 293 (internal citations and quotations omitted).

As a threshold matter, the fact that plaintiffs bring their claim under § 1983 and the Fourteenth Amendment, which were not raised in state court, does not mean that the claim is "independent" and therefore insulates plaintiffs' suit from the ambit of *Rooker-Feldman*. *See Hoblock*, 422 F.3d at 86. If a federal claim asserts injury based on a state judgment and seeks review and reversal of that judgment, the claim is seen to be "inextricably intertwined" with the state judgment, even if it was not raised during the state proceeding. *See id.* at 86-87. In *Hoblock*, the Second Circuit provided a particularly pellucid example depicting a scenario in which *Rooker-Feldman* bars subject matter jurisdiction, notwithstanding the fact that the plaintiff raised different federal claims before the federal court:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state court judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking a reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

*Hoblock*, 422 F.3d at 87; *Fariello v. Campbell*, 860 F. Supp. 54, 65 (S.D.N.Y. 1994) ("[A] plaintiff may not seek reversal of a state court judgment simply by recasting his complaint in the form of a civil rights action pursuant to 42 U.S.C. § 1983.") (citations omitted).

At first glance, the face of the complaint does not appear to allege injury caused by a state court judgment, as the defendants include the Police Commissioner and various members of the New York City Police Pension Fund. In their opposition brief, plaintiffs emphasize this point by arguing that the injury arose from the actions of defendants in approving the DRO by letter dated January 19, 2005. (*See* Pl.'s Mem. at 6-11.)

However, although it is true that the defendants approved the Amended DRO that Judge McGann signed, the defendants' actions were compelled by and undertaken pursuant to Judge McGann's earlier order, of January 7, 2005, which dictated that outstanding alimony be garnished from plaintiff's NYPD disability pension. As made plain by the Second Circuit in *Hoblock*, a plaintiff may not elude the *Rooker-Feldman* doctrine by engaging in clever pleading fictions:

> Can a federal plaintiff avoid *Rooker-Feldman* simply by clever pleading–by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself? Surely not. In the child-custody example given above, if the state has taken custody of a child pursuant to a state judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by the state employees

who took his child rather than by the judgment authorizing them to take the child. The example shows that in some circumstances, federal suits that purport to complain of injury by individuals in reality complain of injury by state-court judgments.

*Hoblock*, 422 F.3d at 88. Consequently, "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it." *Id.* Since plaintiffs' injury arises from the garnishment of the pension and that was in direct compliance with Judge McGann's order of January 7, 2005,[6] the instant suit is in essence alleging injury arising from a state court judgment, notwithstanding the intermediate actions of the defendants that may have been necessary to effectuate that judgment.[7]

Next, the second substantive requirement of *Rooker-Feldman* is satisfied because it is plain that plaintiffs are seeking a reversal of a state court judgment. Specifically, Judge McGann ordered that John Galtieri's NYPD pension be garnished and plaintiffs want the Court to issue an order enjoining defendants from garnishing the pension account pursuant to Judge McGann's order. Plaintiffs' request for relief, if granted, necessarily requires rejection and reversal of the state court judgment.

### B. Procedural *Rooker-Feldman* Requirements

In addition to the substantive *Rooker-Feldman* requirements, a federal suit must satisfy two procedural requirements imposed by *Exxon Mobil*: (1) the federal plaintiff must have lost in state court; and (2) the state-court judgment must have been rendered before the district court proceedings commenced. *See*

---

[6] The Appellate Division of the New Jersey Superior Court recognized that Judge McGann's endorsement of the Amended DRO was for the purpose of enforcing his earlier order of January 7, 2005. *See Galtieri*, 2005 WL 2757230, at *4.

[7] At oral argument, Marilyn Galtieri argued, for the first time, that the instant lawsuit challenges not only the validity of the garnishment order, but also challenges the amount of the garnishment. In particular, she argued that defendants have disbursed funds in excess of $1,500 per month as dictated by the Amended DRO. The Court rejects this characterization of the complaint. Even construing it liberally, it is plain that plaintiffs are alleging violation of their constitutional rights from any garnishment at all. (Compl. ¶ 4.) Plaintiffs' arguments on the merits focus completely upon a contention that his NYPD disability pension benefits were wholly immune from garnishment under New York and Florida law. (*See* Pl.'s Mem.at 12-31.) Their request for

compensatory damages confirms this, as they seek to be reimbursed for nine months in which $1,500 or less was garnished from plaintiff's NYPD disability pension. (Compl. ¶ 8.) Finally, the only reference the complaint makes to garnishment exceeding $1,500 is a citation in the request for compensatory damages, in which they claim that $1,800 was garnished on October 1, 2005, and $2,200 was garnished on October 1, 2005. (*See id.*) The Court notes that neither of these amounts exceed $2,200, an amount explicitly authorized by Judge Coogan's order of December 12, 2003, which ordered that plaintiff pay up to that amount in alimony out of his NYPD disability and social security pensions. *See Galtieri*, 2005 WL 2757230, at *2. To the extent that the plaintiffs try to recharacterize the injury pled by their lawsuit at this juncture, it was effectively caused by the December 12, 2003 order and, thus, it plainly satisfies this substantive element of the *Rooker-Feldman* doctrine.

*Hoblock*, 422 F.3d at 85. The Court examines each in turn.

The first procedural requirement determines whether there is a common identity between the party who lost in state court and the party who filed the suit in federal court. *See id.* at 89. In the instant case, it is plainly evident that federal plaintiff John Galtieri lost when the New Jersey court entered the garnishment order. However, the Court must also address whether this requirement is still met even though plaintiff Marilyn Galtieri was not a party in the New Jersey proceeding.

The Court finds that the fact that Marilyn Galtieri is a plaintiff in the instant action does not impede the application of the *Rooker-Feldman* doctrine because she lacks standing to be a plaintiff in this lawsuit. Under Article III, standing to bring a lawsuit in federal court is limited to plaintiffs that "show that the conduct of which he complains has caused him to suffer an 'injury in fact' that a favorable judgment will redress." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12, 124 S.Ct. 2301 (2004); *see also Ziemba v. Rell*, 409 F.3d 553, 555 (2d Cir. 2005). Further, among other standing requirements, "a plaintiff's alleged injury must be an invasion of a concrete and particularized legally protected interest." *McConnell v. Fed. Election Com'n*, 540 U.S. 93, 227, 124 S.Ct. 619 (2003) (opinion of Rehnquist, C.J., for a majority of the court); *see also Ziemba*, 409 F.3d at 554. Marilyn Galtieri does not claim that she was directly injured by the actions of defendant, but rather asserts that her interest in the instant lawsuit arises from her interest in the pension as marital property that is subject to equitable distribution under New York Domestic Relations Law § 236(B). (*See* Pl.'s Mem. at 24-25.) However, under New York law, a spouse's right to equitable distribution does not vest until a judgment of divorce is entered. *See In re Ostashko*, 333 B.R. 625, 633 (E.D.N.Y. 2005); *Sinha v. Sinha*, 285 A.D.2d 801, 803 (N.Y. App. Div. 2001) ("[S]pouses' respective rights in marital property do not vest under New York law . . . until entry of a judgment dissolving the marriage.") Because John and Marilyn Galtieri are currently married, Marilyn has no legally protected interest in a share of her husband's pension and has not suffered an injury in fact. Therefore, she lacks standing to be a plaintiff in the action. Since her dismissal from the suit would definitively establish a common identity between the party who lost in state court and the party who filed the suit in federal court, the first procedural requirement of the *Rooker-Feldman* doctrine is satisfied.

Alternatively, even if Marilyn Galtieri has standing to be a plaintiff in this action, that does not necessarily foreclose a finding that the first procedural requirement of *Rooker-Feldman* is satisfied. A party may be treated, for *Rooker-Feldman* purposes, as if he or she was a plaintiff in the state court action if he or she would be treated as such under the federal law of preclusion. *See Hoblock*, 422 F.3d at 90. Under the federal law of preclusion, the question is whether there was sufficient privity between John and Marilyn Galtieri, such that Marilyn Galtieri should be considered a party to, and bound by, John Galtieri's New Jersey state lawsuit. *See id.* According to the Supreme Court, a nonparty may be bound by the results of another's litigation "when, in certain limited circumstances, a person, although not a party, has his interests adequately represented by someone with the same interests who is a party." *Id.* (quoting *Martin v. Wilks*, 490 U.S. 755, 762 n.2, 109 S.Ct. 2180 (1989)); *see also*

*Richards v. Jefferson County, Ala.,* 517 U.S. 793, 798, 116 S.Ct. 1761 (1996). *"Wilks* provided two examples of such 'limited circumstances': 1) where the first suit was brought by a class representative and the second suit was brought by a class member; and 2) where the second suit was brought by a party who actually controlled, without being a party to, the first suit." *Id.* (citing *Wilks,* 490 U.S. at 762 n.2) (internal citations omitted). In addition, the Second Circuit has interpreted the concept of privity under federal law to include the "virtual representation" doctrine, which may "bar . . . non-parties to earlier litigation . . . when the interests involved in the litigation are virtually identical to those in later litigation." *Chase Manhattan Bank, N.A. v. Celotex Corp.,* 56 F.3d 343, 345 (2d Cir. 1995); *Aerojet-Gen. Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir. 1975) ("[A] person may be bound by a judgment even though not a party if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative.").

The Court finds that plaintiffs John and Marilyn Galtieri were in privity because their interests in the New Jersey proceeding were absolutely identical. As discussed *supra*, Marilyn's interests in the litigation do not arise directly from the conduct of defendants, but rather lie indirectly insofar as the proceeds from her husband's pension represent potential marital property. This interest is completely derivative of John Galtieri's rights vis-á-vis the defendants and, therefore, there is no question that plaintiff John Galtieri adequately represented Marilyn's identical interests. Because privity existed, Marilyn Galtieri is considered a state court loser for *Rooker-Feldman* purposes and the first

procedural requirement is satisfied.[8]

_____

[8] To the extent that the alternative analysis relies on the virtual representation doctrine, the Court recognizes that the doctrine is controversial, *see, e.g., Tice v. Am. Airlines, Inc.,* 162 F.3d 966, 970-73 (7th Cir. 1993), and that the Second Circuit has noted that there is a question as to whether the doctrine was undermined by the Supreme Court's discussion of the doctrine in *Richards*, which postdated both *Chase Manhattan Bank* and *Aerojet*. *See Hoblock*, 422 F.3d at 90-91. As a threshold matter, it should be noted that a number of courts have applied the virtual representation doctrine post-*Richards*. *See, e.g., Eclaire Advisor Ltd. as Trustee to Daewoo Int'l (Am.) Corp. Creditor Trust v. Daewoo Eng'g & Constr. Co.,* 375 F. Supp. 2d 257, 266 (S.D.N.Y. 2005); *U.S. ex rel. Mills*, No. 98-CV-1326 (LBS) (JCF), 2002 WL 31045940, at *6 (S.D.N.Y. June 21, 2002); *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.,* Nos. 96-CV-3231 (RPP), 96-CV-5567 (RPP), 2002 WL 975623, at *9 (S.D.N.Y. May 9, 2002); *Cowan v. Ernest Codelia, P.C.*, 149 F. Supp. 2d 67, 77 (S.D.N.Y. 2001) ("In determining whether parties have an identity of interests New York courts permit flexible consideration of whether all of the facts and circumstances of the party's and nonparty's actual relationship, their mutuality of interests and the manner in which the nonparty's interests were represented in the previously decided litigation establishes a functional representation such that the nonparty may be thought to have had a vicarious day in court.") (quotation and citation omitted); *Nabisco, Inc. v. Amtech Int'l, Inc.,* No. 95-CV-9699 (LBS), 2000 WL 35854, at *7 (S.D.N.Y. Jan. 18, 2000). The Court finds the analysis in these cases persuasive as applied to the circumstances of the instant case. Moreover, to the extent that *Richards* may have cut back on the virtual representation doctrine, the Court finds the case distinguishable from the facts of the instant case. In *Richards,* the Supreme Court held that three individuals who sued in an earlier suit could not bind a class, where there was no reason to believe that the court presiding over the first suit took care to protect the interests of absent class

The second procedural requirement involves timing–namely, the federal suit must have been initiated after the challenged state judgment. This requirement is plainly met by the facts of this case because the state court judgment that is being essentially appealed by the instant case was ordered on January 7, 2005, and the instant action was filed on October 17, 2005.[9]

---

members, and there was no reason to suppose that the individuals understood their action to be on behalf of absent class members. *See* 517 U.S. at 802. The court concluded by noting that "[b]ecause [class members] and the [individual plaintiffs] are best described as mere 'strangers' to one another, we are unable to conclude that the [individual] plaintiffs provided representation sufficient to make up for the fact that petitioners neither participated in, nor had the opportunity to participate in, the [individual] action." *Id.* The instant case does not involve preclusion as applied between individuals and absent class members, and John and Marilyn Galtieri are not mere "strangers" to one another. Moreover, the fact that Marilyn Galtieri's purported interest in the suit is wholly derivative from John Galtieri's rights makes their relationship more akin to a guardian-ward or a trustee-beneficiary relationship, which *Richards* noted are sufficient to establish privity for preclusion purposes. *See id.* at 798.

[9] The Court notes the New Jersey Appellate Division did not rule on his appeal until October 26, 2005, slightly more than a week after he filed the instant action. However, it is well-settled that "the *Rooker-Feldman* doctrine precludes review of lower state court decisions, just as it precludes review of the decisions of a state's highest court." *Hill v. Town of Conway*, 193 F.3d 33, 40-41 (1st Cir. 1999) (quoting *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. and N.J.*, 973 F.2d 169, 178 (3d Cir. 1992)); *Lombard v. Lombard*, No. 00-CV-6703 (SAS), 2001 WL 548725, at *3 (S.D.N.Y. May 23, 2001) ("[I]f federal district courts are precluded, as they are, from reviewing the decisions of a state's highest court . . . then

## III. CONCLUSION

In sum, the essence of this lawsuit is an appeal of the New Jersey court's judgment which ordered that plaintiff John Galtieri's pension be garnished for the purpose of satisfying his alimony obligations. However, only the United States Supreme Court may hear appeals from state-court judgments under the *Rooker-Feldman* doctrine. Because all of the elements for the application of the *Rooker-Feldman* doctrine are satisfied, the Court dismisses the action, with prejudice, for want of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1).[10] Accordingly, the Clerk of the Court shall close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 19, 2006
Central Islip, New York

---

federal district courts are certainly also precluded from reviewing decisions of lower state courts, which are subject to correction and modification within the state court system.") (quoting *Port Auth. Police Benevolent Ass'n,* 973 F.2d at 177); *see also Gloster v. Segal*, No. 94-CV-3174 (RJD), 1995 WL 170086, at *1 (E.D.N.Y. Apr. 3, 1995) (applying *Rooker-Feldman* to lower state court decision).

[10] Since the Court lacks subject matter jurisdiction over this case, the Court does not reach defendants' alternative argument, that the complaint should be dismissed for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). *See Rhulen Agency,* 896 F.2d at 678 (noting that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction); *see also Coveal*, 2005 WL 2708388, at *2 (same).

* * *

The plaintiffs appeared *pro se* in this action. The attorneys for the defendants are Michael A. Cardozo, Esq., Corporate Counsel of the City of New York, by Jay Douglas Dean, Esq., Assistant Corporation Counsel, 100 Church Street, Room 5-143, New York, New York 10007.